**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

JHOHANI JOSE PERDOMO PEREZ,

                                        Petitioner,                    9:26-cv-120
                                                                       (ECC)

v.

FREDERICK J. AKSHAR II, in his official
capacity as Warden of the Broome County
Correctional Facility; PAMELA BONDI, in her
official capacity as U.S. Attorney General;
PHILIP RHONEY, in his official capacity as
Deputy Field Office Director, Buffalo Field
Office, U.S. Immigration & Customs
Enforcement; TAMMY MARICH, in her official
capacity as Field Office Director, Buffalo Field
Office, U.S. Immigration & Customs
Enforcement; TODD LYONS, in his official
capacity as Acting Director, U.S. Immigration
and Customs Enforcement; and KRISTI NOEM,
in her official capacity as Secretary of Homeland
Security,

                                        Defendants.

---

Matthew K. Borowski, Esq., *for Petitioner*
Joshua T. Terrell, Esq., *for Respondent Akshar*
David M. Katz, Asst. U.S. Attorney, *for the Federal Respondents*

**Hon. Elizabeth C. Coombe, United States District Judge:**

## MEMORANDUM DECISION AND ORDER

On October 8, 2025, Petitioner Jhohani Jose Perdomo Perez (Perez), a noncitizen who has

been present in the United States since June 19, 2022, was taken into custody by Immigration and

Customs Enforcement (ICE). Dkt. No. 1 (Pet.) ¶¶ 1, 2, 6.  On January 25, 2026, while he was

detained at the Broome County Jail in Binghamton, New York, Petitioner filed a petition for a writ

of habeas corpus, pursuant to 28 U.S.C. § 2241.  *Id.* at ¶¶ 19-21.  Petitioner seeks immediate

release, or in the alternative, a bond hearing, and attorney's fees and costs under the Equal Access to Justice Act, as amended, 28 U.S.C. § 2412. *Id.* at 18; *see also id.* at ¶ 13.

On January 26, 2026, the day after the petition was filed, the Court issued an Order directing Respondents to show cause why the petition should not be granted, setting a briefing schedule, scheduling oral argument for February 6, 2026, and prohibiting Respondents from moving Petitioner outside the Northern District of New York while the Petition is pending. Dkt. No. 2.

After considering briefing from the parties, Dkt. Nos. 1, 9, 10, 11, and arguments made during a hearing, the Court issued an oral decision during the hearing and a brief written decision later that day granting the Petition and ordering Petitioner's immediate release. Dkt. Nos. 16, 17. This decision provides more detailed reasons for those orders and addresses Petitioner's request for Equal Access to Justice Act fees and costs.

## I.     Background

Petitioner, a citizen of Venezuela, entered the United States without inspection on June 19, 2022. Dkt. No. 1 (Pet.) ¶ 2; Dkt. No. 10 at 10.[1] On June 20, 2022, he was paroled into the United States. Pet. ¶ 3; Dkt. No. 10 at 10. On May 28, 2023, he filed an application for asylum, and on October 18, 2023, he received Temporary Protected Status. Pet. ¶ 5. His asylum application is still pending, and a hearing regarding that petition was scheduled for February 23, 2026. *Id.* at ¶ 8.

Almost four months ago, on October 8, 2025, Perez went to the Syracuse Immigration and Customs Enforcement (ICE) for an appointment, and he was taken into custody. *Id.* at ¶ 6; Dkt. No. 10 at 10. The same day, he was also served with a Notice to Appear charging him with

---

[1] Page numbers refer to the pagination generated by ECF, unless otherwise noted.

inadmissibility under 8 U.S.C. §§ 1182(a)(6)(A)(i) and 1182(a)(7)(A)(i)(I).  Dkt. Nos. 1-1 at 4; 10 at 10.  On January 25, 2026, while detained at Broome County Jail in Binghamton, New York, Petitioner filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2241.  Pet. ¶¶ 19-21.

Petitioner was in Broome County Jail from October 8, 2026 through February 6, 2026, the day that this Court ordered his release.  Pet. ¶ 14; Dkt. No. 17.

## II.    JURISDICTION

"'28 U.S.C. § 2241 authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws . . . of the United States.'"  *Gaspar v. Akshar,* 9:26-cv-118 (BKS), Dkt. No. 13, at 4 (N.D.N.Y. Feb. 17, 2026) (quoting *Wang v. Ashcroft,* 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)).  In addition, "'[f]ederal courts have jurisdiction to hear habeas corpus claims by non-citizens challenging the constitutionality of their detention.'"  *Id.* at 5 (quoting *Lopez v. Sessions,* No. 18-cv-4189, 2018 WL 2932726, at *6 (S.D.N.Y. June 12, 2018) (citing *Demore v. Kim,* 538 U.S. 510, 516-17 (2003)).

## III.    DISCUSSION

### A.  Statutory Basis for Detention

Perez seeks immediate release because the applicable statute for his detention is 8 U.S.C. § 1226(a).  "Detention pending adjudication of removal under Section 1226 is discretionary and affords noncitizens detained thereunder the right to an initial determination as to eligibility for release and the opportunity for a bond hearing upon detention."  *Tumba Huamani v. Francis*, No. 25-cv-8110, 2025 WL 3079014, at *2 (S.D.N.Y. Nov. 4, 2025).  In contrast, Respondents argue that 8 U.S.C. § 1225(b)(2)(A) applies.  Detention under that provision is mandatory "with rare

exceptions not relevant here." *Cardenas v. Almodovar,* No. 25-cv-9169, 2025 WL 3215573, at *1 (S.D.N.Y Nov. 18, 2025).

The issue of which provision applies to noncitizens already in the United States, like Perez, has been the subject of habeas petitions filed throughout the country. There is no binding authority from the Supreme Court or the Second Circuit, and the two Circuits that considered this issue have reached different conclusions. The Fifth Circuit agreed with the Government's position. *Buenrostro-Mendez v. Bondi,* No. 25-20496, 2026 WL 323330 (5th Cir. Feb. 6, 2026). But, in the context of whether the Government was likely to succeed on the merits of its argument that noncitizens arrested by ICE without a warrant could be held under Section 1225(b)(2)(A), the Seventh Circuit disagreed with the Government's position. *Castanon-Nava v. U.S. Dep't of Homeland Sec.,* 161 F.4th 1048, 1062 (7th Cir. 2025).

Although some district courts have agreed with the Government's position, a substantial majority have not. *See Barco Mercado v. Francis,* No. 25-cv-6582, 2025 WL 3295903, at *4 (S.D.N.Y. Nov. 26, 2025) (explaining that the Government's position "has been challenged in at least 362 cases in federal district courts" and the "challengers have prevailed, either on a preliminary or final basis in 350 of those cases decided by over 160 different judges sitting in about fifty different courts spread across the United States."). Here in the Second Circuit, an overwhelming majority of district courts have adopted the majority position. *See Chen v. Almodovar,* 25 Civ. 9670, 2026 WL 100761, at *14 (S.D.N.Y. Jan. 14, 2026) (acknowledging in a case adopting the minority position that "the overwhelming majority of judges in [the Southern District of New York] and around the country to consider the issue have reached a contrary conclusion" and that its holding "puts it in the minority of those courts in the Second Circuit to have considered the question"); *see also Cardenas,* 2025 WL 3215573, at *1 ("by this Court's

count, there are scores of decisions—in this Circuit and beyond—on the Section 1226(a) side of the split") (collecting cases).

This Court agrees with the majority position and concludes that Perez, who was paroled into the United States more than two years before his October 2025 arrest, was not seeking admission when he was arrested and that, for the persuasive reasons articulated by other district courts, Section 1226(a), not Section 1225(b)(2)(A) applies.  *See, e.g. Gaspar,* Dkt. No. 13, at 9-15 (collecting cases); *Cardenas,* 2025 WL 3215573, at *2 (relying on "the thorough and well-reasoned analysis of the issue" by the judges in, among others cases, *Tumba Huamani,* 2025 WL 3079014, at *2-5); *Lopez Benitez v. Francis,* No. 25-cv-5937, 2025 WL 2371588, at *3-*9 (S.D.N.Y. Aug. 13, 2025).   This "conclusion is compelled by the text of Section 1225 itself," "by the context and 'overall statutory scheme,'" and "by the amendment history of Section 1226, including [the Laken Riley Act] amendment enacted just months ago." *Cardenas,* 2025 WL 3215573, at *2 (citations omitted).  *See also Gaspar,* Dkt. No. 13 at 12-15; *Quituizaca v. Bondi,* No. 25-cv-6527, 2025 WL 3264440, at *3-*4 (W.D.N.Y. Nov. 24, 2025).  As a result, under the circumstances of this case, the Court finds that Petitioner "may only be subject to detention as a matter of discretion" under Section 1226(a).  *Singh v. Maldonado,* No. 26-cv-19, 2026 WL 233216, at *8 (E.D.N.Y. Jan. 29, 2026).

## B.    Required Due Process

The next question is whether Petitioner's detention violates due process.  Noncitizens, like Perez, are protected by the Fifth Amendment's Due Process Clause guaranteeing that they cannot be deprived of liberty "without due process of law." *Zadvydas v. Davis,* 533 U.S. 678, 693 (2001). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Id.* at 690.   In addition, that liberty

interest protects people from detention without "notice of the case against him and opportunity to meet it." *Matthews v. Eldridge,* 424 U.S. 319, 348 (1976). "Habeas review is available to challenge 'the lawfulness of detention when it is first imposed' as well as 'to challenge whether, at some point, an ongoing detention has become unlawful.'" *Gaspar,* Dkt. No. 13 at 15 (quoting *Velasco Lopez v. Decker,* 978 F.3d 842, 850 (2d Cir. 2020)). "'The Supreme Court has been unambiguous that executive detention orders, which occur without the procedural protections required in courts of law, call for the most searching review.'" *Id.* at 15-16 (quoting *Velasco Lopez,* 978 F.3d at 850 (additional citation omitted)).

Courts apply the three-factor balancing test articulated in *Matthews*: "(1) 'the private interest that will be affected by the official action'; (2) 'the risk of an erroneous deprivation of such interest through the procedures used, and the probative value, if any, of additional or substitute procedural safeguards'; and (3) 'the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.'" *Gaspar,* Dkt. No. 13 at 16 (quoting *Velasco Lopez,* 978 F.3d at 850) (in turn quoting *Matthews,* 424 U.S. at 335).

Regarding the first factor, Petitioner has established a liberty interest in being released from imprisonment. *See Crespo Tacuri v. Genalo,* No. 25-cv-6896, 2026 WL 35569, at *7 (E.D.N.Y. Jan. 6, 2026) (concluding that Petitioner had a "cognizable private interest in being freed from unlawful detention") (citing, among others, *Hamdi v. Rumsfeld,* 542 U.S. 507, 529 (2004) ("[T]he most elemental of liberty interests [is] the interest in being free from physical detention by one's own government.")).

Regarding the second factor, Perez did not have an opportunity to post bond or argue for release on conditions. In addition, there is nothing in the record indicating that (1) there were

changed circumstances between when he was paroled into the United States and when he was arrested that support the change in Perez's detention status, (2) Perez is a risk of flight or a danger to the community, or (3) anyone considered whether, given his specific situation, Perez was a risk of flight or a danger to the community.  As a result, there is a high risk of erroneous deprivation of Petitioner's liberty.  *See Gaspar,* Dkt. No. 13 at 17 ("The risk of erroneous deprivation of Petitioner's liberty is therefore high.") (citing *Valdez v. Joyce,* 803 F. Supp. 3d 213, 218 (S.D.N.Y. 2025) ("Petitioner's re-detention without any change in circumstances or procedure establishes a high risk of erroneous deprivation of his protected liberty interest.") and *Singh,* 2026 WL 233216, at *9 ("finding 'the risk of erroneous deprivation of Petitioner's liberty interest' was 'high' where it was undisputed 'that no individualized determination was made prior to or contemporaneously with the decision to detain Petitioner in December 2025, and there was no change in circumstances from the time DHS released Petitioner on his own recognizance in March 2024 to his re-arrest and detention in December 2025")).

Regarding the third factor, despite the Government's "interests in 'ensuring the appearance of aliens at future immigration proceedings' and 'preventing danger to the community,'" the Court concludes that interest here is low given that there is no evidence that Perez is a danger to the community or a flight risk.  *Gaspar,* Dkt No. 13 at 17 (citing *Crespo Tacuri,* 2026 WL 35569 at *7 ("[T]he government's interest in continued detention is slight insofar as petitioner was detained without an individualized custody determination that evaluated dangerousness and flight risk or any articulated change in circumstances.")).

The Court therefore finds that Petitioner's detention violates his rights under the Due Process Clause of the Fifth Amendment.

### C.    Remedy

The appropriate remedy is release. *See Gaspar,* Dkt. No. 13 at 18-19 (collecting cases); *Cardenas,* 2025 WL 3215573, at *3 (citing *Lopez Benitez,* 2025 WL 2371588, at *15 (reaching that result by applying the *Matthews* test); *Tumba Huamani,* 2025 WL 3079014, at *8-9 (reaching that result, but concluding that the *Matthews* test does not apply)); *see also Rodriguez-Acurio v. Almodovar*, No. 2:25-cv-6065, 2025 WL 3314420, at *32-33 (E.D.N.Y. Nov. 28, 2025) (concluding that where ICE detained the Petitioner "under the wrong statute and without any notice or opportunity to be heard, much less the procedures required under Section 1226(a)," then "a post-deprivation bond hearing before a DHS officer or even an immigration judge would provide no genuine opportunity for relief because the detention without adequate pre-deprivation procedures has already been carried out.")

In addition, Respondents are enjoined from denying Petitioner bond in any subsequent proceeding on the grounds that he must be detained under 8 U.S.C. 1225(b)(2)(A) absent a change in relevant circumstances. *See Rodriguez-Acurio,* 2025 WL 3314420, at *32-33 (concluding that "[t]his additional relief is necessary in order to ensure that the release of [Petitioner] pursuant to this Opinion and Order is not rendered meaningless" and, "[a]s a result, the relief ordered here falls within the 'core of habeas.'") (quoting *Dep't of Homeland Sec. v. Thuraissigiam,* 591 U.S. 103, 119 (2020)).

For these reasons, it is

**ORDERED** that the Petition for a writ of habeas corpus, Dkt. No. 1, is **GRANTED**; and it is further

**ORDERED** that pending the issuance of any final removal order against Petitioner Jhohani Jose Perdomo Perez, Respondents are enjoined from denying him bond in any subsequent proceeding on the basis that he must be detained pursuant to 8 U.S.C. § 1225(b)(2)(A) absent a

change in relevant circumstances, consistent with this Memorandum-Decision and Order; and it is further

**ORDERED** that Petitioner's request for reasonable attorney's fees and costs under the Equal Access to Justice Act is **GRANTED** and any request for such fees and costs shall be filed by March 17, 2026, and any response shall be filed by March 27, 2026; and it is further

**ORDERED** that the Clerk of the Court enter judgment accordingly and close this case.

**IT IS SO ORDERED.**

Dated: March 5, 2026

Elizabeth C. Coombe
U.S. District Judge